**THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF LOUISIANA**

| | |
|---|---|
| IN RE: ACTOS PRODUCTS LIABILITY LITIGATION | ) |
| | ) |
| | ) |
| REBHI YAGHNAM and | ) |
| HASBIEH YAGHNAM, (h/w), | ) |
| | ) |
|     Plaintiffs, | ) |
| | )    MDL No. 6:11-md-2299 |
| vs. | ) |
| | )    JUDGE DOHERTY |
| TAKEDA PHARMACEUTICALS | ) |
|     INTERNATIONAL, INC., | )    MAGISTRATE JUDGE HANNA |
| **Serve:** Registered Agent | ) |
|     CT Corporation System | )    Civil Action No.: _____ |
|     120 South Central Avenue | ) |
|     Clayton, MO 63105 | ) |
| | ) |
| and | ) |
| | ) |
| TAKEDA PHARMACEUTICAL | ) |
|     COMPANY, LTD., | ) |
| **Serve:** Takeda Pharmaceutical Co. Ltd. | ) |
|     Attn:   Legal Department | ) |
|     1-1 Doshomachi 4-chrome | ) |
|     Chuo-Ku,   Osaka, | ) |
|     540-8645,  Japan | ) |
| | ) |
| and | ) |
| | ) |
| TAKEDA PHARMACEUTICALS USA, INC. | ) |
|     (f/k/a TAKEDA PHARMACEUTICALS | ) |
|     NORTH AMERICA, NC.), | ) |
| **Serve:** Registered Agent | ) |
|     CT Corporation System | ) |
|     208 So. LaSalle Street, Suite 814 | ) |
|     Chicago, IL 60604 | ) |
| | ) |
| and | ) |
| | ) |

TAKEDA GLOBAL RESEARCH & )
 DEVELOPMENT CENTER, INC., )
**Serve:** Registered Agent )
 CT Corporation System )
 120 South Central Avenue )
 Clayton, MO 63105 )
 )
and )
 )
TAKEDA CALIFORNIA, INC. )
 (f/k/a TAKEDA SAN DIEGO, INC.) )
**Serve:** Registered Agent )
 CT Corporation System )
 818 W. Seventh Street )
 Los Angeles, CA 90017 )
 )
and )
 )
TAKEDA PHARMACEUTICALS )
 AMERICA, INC., )
**Serve:** Registered Agent )
 CT Corporation System )
 120 South Central Avenue )
 Clayton, MO 63105 )
 )
and )
 )
ELI LILLY AND COMPANY, )
**Serve:** Registered Agent )
 National Registered Agents, Inc. )
 200 West Adams Street )
 Chicago, Illinois   60606 )
 )
 Defendants. )

## COMPLAINT AND DEMAND FOR JURY TRIAL

Plaintiffs Rebhi Yaghnam and Hasbieh Yaghnam (alternatively referred to as

"Plaintiffs"), residing in Saint Louis, Missouri, by and through the undersigned attorney, hereby

bring this cause of action against Defendants Takeda Pharmaceutical Company Limited ("Takeda

Limited"), Takeda Pharmaceuticals International, Inc. ("Takeda International"), Takeda

Pharmaceuticals USA, Inc. ("Takeda USA"), Takeda Global Research & Development Center, Inc. ("Takeda Global"), Takeda California, Inc. ("Takeda California"), and Takeda Pharmaceuticals America, Inc. ("Takeda America") (collectively "Takeda") and Eli Lilly and Company ("Lilly" or collectively with Takeda as "Defendants") and as for their Complaint allege, upon information and belief and based on the investigation to date of counsel, as follows:

## INTRODUCTION

1.      This is a personal injury action brought for injuries caused to Plaintiffs as a result of ingesting Defendants' unreasonably dangerous and defective drug Actos (pioglitazone), a prescription medication used to improve blood sugar (glucose) control in adults with Type 2 diabetes.  Actos is sold as a single ingredient product under the brand name Actos.

## JURISDICTION AND VENUE

2.      This Court has jurisdiction over this action pursuant to 28 U.S.C. §1332, because the amount in controversy as to the Plaintiffs exceeds $75,000.00, exclusive of interest and costs, and because Defendants are all incorporated and have their principal places of business in states other than the state in which the Plaintiffs reside.

3.      This Court has supplemental jurisdiction over the remaining common law and state claims pursuant to 28 U.S.C. §1367.

4.      Venue is proper in this Court pursuant to 28 U.S.C. §1391 because a substantial part of Defendants business activities giving rise to Plaintiffs' claims occurred in the Eastern District of Missouri.

## PLAINTIFFS

5.      Plaintiff Rebhi Yaghnam, a citizen of Missouri, is a natural person and a resident of St. Louis County, Missouri.  Plaintiff Rebhi Yaghnam used the prescription Actos as

prescribed and directed by his physicians for long-term maintenance of Type 2 diabetes.

6.      Plaintiff Hasbieh Yaghnam, is a citizen of Missouri and is married to Rebhi Yaghnam and brings a claim for loss of consortium related to Plaintiff Rebhi Yaghnam's injuries.

7.      Plaintiffs were injured as a result of Plaintiff Rebhi Yaghnam's use of Actos, and therefore seek damages, ascertainable economic losses, attorneys' fees, reimbursement of cost of obtaining Actos, reimbursement for all past, present, and future health and medical care costs related to Actos.

## **<u>DEFENDANTS</u>**

8.      Defendant Takeda Pharmaceuticals International, Inc. is a Delaware corporation with its principal place of business in the State of Illinois.

9.      Takeda Pharmaceuticals International, Inc. does and transacts business in all States of the United States, including the State of Missouri.

10.      Defendant Takeda Pharmaceutical, Ltd. is a Japanese corporation with its principal place of business in Japan and its United States headquarters located in Deerfield, Illinois.

11.      Takeda Pharmaceutical Company, Ltd. does and transacts business in all States of the United States, including the State of Missouri.

12.      Defendant Takeda Pharmaceuticals USA, Inc., formerly known as Takeda Pharmaceuticals North America, Inc., is a Delaware corporation with its principal place of business located in the State of Illinois.

13.      Takeda Pharmaceuticals USA, Inc. does and transacts business in all States of the United States, including the State of Missouri.

14.     Defendant Takeda Global Research & Development Center, Inc. is a Delaware corporation with its principal place of business located in the State of Illinois.

15.     Takeda Global Research & Development Center, Inc. does and transacts business in all States of the United States, including the State of Missouri.

16.     Defendant Takeda California, Inc., formerly known as Takeda San Diego, Inc., is a Delaware corporation with its principal place of business located in the State of California.

17.     Takeda California, Inc. does and transacts business in all States of the United States, including the State of Missouri.

18.     Defendant Takeda Pharmaceuticals America, Inc. is a Delaware corporation with its principal place of business located in the State of Illinois.

19.     Takeda Pharmaceuticals America, Inc. does and transacts business in all States of the United States, including the State of Missouri.

20.     At all pertinent times, Defendants Takeda Pharmaceutical Company, Ltd., Takeda Pharmaceuticals International, Inc., Takeda Pharmaceuticals USA, Inc. (f/k/a Takeda Pharmaceuticals North America, Inc.), Takeda Global Research & Development Center, Inc., Takeda California, Inc. (f/k/a Takeda San Diego, Inc.), and Takeda Pharmaceuticals America, Inc., (hereinafter, along with Defendant Eli Lilly and Company, collectively referred to as "Defendants" unless otherwise delineated), have been engaged in the research, development, manufacture, design, testing, sale and marketing of pharmaceutical products, including, but not limited to Actos and pioglitazone hydrochloride.

21.     At all pertinent times, all Defendants were under the complete dominion and control of Defendant Takeda Pharmaceutical Company, Ltd., and all other Defendants are the agents and alter-egos of Defendant Takeda Pharmaceutical Company, Ltd. and acted within the

course and scope of their agency.

22.    Defendant Eli Lilly and Company is an Indiana corporation, having its principal place of business in the State of Indiana, and a registered agent in the State of Missouri, and does and transacts business in all States of the United States, including the State of Missouri.

23.    At all pertinent times, Defendant Eli Lilly and Company has engaged in the research, development, manufacture, design, testing, sale and marketing of pharmaceutical products, including but not limited to Actos and pioglitazone hydrochloride.

24.    At all pertinent times, Defendants have conducted continuous and systematic business in the State of Missouri, transacted business in the State of Missouri, and placed Actos and pioglitazone hydrochloride in the stream of commerce with the knowledge and intent that it be sold in the State of Missouri and consumed by Missouri residents.

## SUMMARY OF THE CASE

25.    From at least April 2008 to at least May 2013, Plaintiff Rebhi Yaghnam continuously took Actos manufactured and distributed by Defendants for treatment of Type 2 diabetes.

26.    As a result of the defective nature of Actos, persons who were prescribed and who subsequently ingested this product, including Plaintiff Rebhi Yaghnam, have suffered and may continue to suffer from bladder cancer..

27.    Defendants concealed and continue to conceal their knowledge of Actos' unreasonably dangerous risks from Plaintiff Rebhi Yaghnam, his physicians, other consumers, and the medical community.  Specifically, Defendants failed adequately to inform consumers and the prescribing medical community about the risk of bladder cancer associated with more than twelve months of Actos ingestion.

28.     As a result of Defendants' actions and inactions, Plaintiffs were injured due to Plaintiff Rebhi Yaghnam's ingestion of Actos, which caused and will continue to cause Plaintiffs various injuries and damages.  Plaintiffs accordingly seek damages associated with these injuries.

## FACTUAL ALLEGATIONS

29.     Defendants, directly or through their agents, apparent agents, servants or employees designed, manufactured, marketed, advertised, distributed, promoted and sold Actos, for the treatment of Type 2 diabetes mellitus.

30.     According to the American Diabetes Association, Type 2 diabetes is the most common form of diabetes.  Type 2 diabetes develops when the body does not produce enough insulin or does not efficiently use the insulin that it produces.  Type 1 diabetes occurs when the body does not produce any insulin at all.  Insulin is necessary for the body to be able to use glucose for energy.

31.     Actos was jointly launched by Takeda North America and Lilly in 1999.

32.     Actos was approved by the Food and Drug Administration ("FDA") in July of 1999 to treat Type 2 diabetes.

33.     Actos is in a class of insulin-sensitizing diabetes agents known as thiazolidinediones ("TZDs").

34.     On April 20, 2006, Takeda Limited announced the conclusion of its collaboration in the United States between Takeda North America and Lilly to promote and market Actos.

35.     Takeda Limited described this partnership as "a great success" and "mutually beneficial to both companies."

36.     Actos exerts its antihyperglycemic effect only in the presence of endogenous insulin.  Therefore, Actos is only used to treat Type 2 diabetes and should not be used to treat

Type 1 diabetes.

37.     Actos is also sold in combination with metformin (Actoplus Met, Actoplus Met XR) and in combination with glimepiride (Duetact).

38.     As a result of the defective nature of Actos, persons who were prescribed and ingested Actos for more than twelve months, including Plaintiff Rebhi Yaghnam, were at increased risk for developing bladder cancer, have suffered and may continue to suffer from bladder cancer.

39.     As a result of the defective nature of Actos, persons who were prescribed and ingested Actos for more than twelve months, including Plaintiff Rebhi Yaghnam, developed bladder cancer, have suffered and may continue to suffer from bladder cancer.

40.     Defendants concealed their knowledge that Actos can cause bladder cancer from Plaintiffs, other consumers, and the medical community.

41.     Specifically, Defendants did not adequately inform consumers and the prescribing medical community about the risks of bladder cancer with use of Actos for more than twelve months.

42.     As a result of Defendants' actions and inactions, Plaintiffs were injured due to Plaintiff Rebhi Yaghnam's ingestion of Actos, which caused and will continue to cause Plaintiffs various injuries and damages.  Plaintiffs accordingly seek damages associated with these injuries.

43.     Prior to Actos being approved by the FDA, a two-year carcinogenicity study was conducted on male and female rats.  Drug-induced tumors were observed in male rats receiving doses of Actos that produced blood drug levels equivalent to those resulting from a clinical dose.

44.     In 2005, the results of the PROactive (PROspective Pioglitazone Clinical Trial In MacroVascular Events) three-year study were published. PROactive prospectively looked at the

impact in total mortality and macrovascular morbidity using Actos.  Dormandy J.A., *et al.*

(Secondary Prevention of Macrovascular Events in Patients with Type 2 Diabetes in the

PROactive Study (PROspective PioglitAzone Clinical Trial In Macro Vascular Events): a

Randomized Controlled Trial, Lancet, 266:1279-1286 (2005) (the "Dormandy paper").

45.     The PROactive study was looking at cardiovascular events and outcomes.

46.     During the course of monitoring the study, the researchers and Defendants became

aware that there was a statistically significant demonstrated higher percentage of bladder cancer

cases in patients receiving Actos *versus* comparators.

47.     Neither during the study, nor in the actual final Dormandy paper, did the

researchers or the Defendants publish these statistically significant increases of bladder cancer.

48.     This information was not included in the published Dormandy paper.

49.     Defendants willfully, wantonly and with malice withheld the knowledge of

increased risk of cancer in users of Actos to prevent any chances of its products' registrations

being delayed or rejected by the FDA.

50.     A three-year liver safety study was also performed, and according to the FDA, that

study also demonstrated a higher percentage of bladder cancer cases in patients receiving Actos

*versus* comparators.

51.     On September 17, 2010, the FDA issued a Safety Announcement stating it was

undertaking a review of the data from an ongoing, ten-year epidemiological study being

conducted by Kaiser Permanente to evaluate the association between Actos and bladder cancer.

The planned five-year interim analysis demonstrated that the risk of bladder cancer increases

with increasing dose and duration of Actos use, reaching statistical significance after 24 months.

52.     Despite FDA finding that Actos is linked to a statistically significant increase in

the risk for developing bladder cancer, Robert Spanheimer, Vice President of Medical and

Scientific Affairs for Takeda, claimed to Reuters that the Kaiser Permanente study has not shown

a risk to patients of bladder cancer or other cancers from Actos.

53.    In early 2011, the American Diabetes Association published Piccinni, *et al.*

Assessing the Association of Pioglitazone Use and Bladder Cancer Through Drug Adverse Event

Reporting, Diabetes Care, 34:1369-1371 (June 2011).  This study looked at adverse events

reports made to the FDA between 2004 and 2009.  The conclusion of that study was that "[i]n

agreement with preclinical and clinical studies, AERS analysis is consistent with an association

between pioglitazone and bladder cancer.  This issue needs constant epidemiologic surveillance

and urgent definition by more specific studies."

54.    On June 9, 2011, the European Medicines Agency announced that it had been

informed by the French Medicines Agency of its decision to suspend the use of pioglitazone-

containing medicines (Actos, Competact) in France while awaiting the outcome of the ongoing

European review.

55.    France's decision was based upon a retrospective cohort study in France using the

French National Health Insurance Plan, which demonstrated a statistically significant increase in

the risk for bladder cancer in males exposed to Actos for more than a year.  The French cohort

included 1.5 million patients with diabetes that were followed for 4 years (2006- 2009).

56.    On June 10, 2011, Reuters published that Germany had joined France in

suspending the use of Actos after Germany's Federal Institute for Drugs and Medical Devices.

("BfArM") reviewed the results of the French study. BfArM recommended that doctors should

not put new patients on pioglitazone.

57.    On June 15, 2011, the FDA issued another Safety Announcement stating that "use

of the diabetes medication Actos (pioglitazone) for more than one year may be associated with an increased risk of bladder cancer."  The FDA ordered information about this risk to be added to the <u>Warnings and Precautions</u> section of the label for pioglitazone-containing medicines.

58.     The FDA reported that the risk of bladder cancer increased with increasing dose and duration of pioglitazone use.  When compared to persons never exposed to pioglitazone, exposure to pioglitazone therapy for longer than 12 months was associated with a 40% increase in risk.  Based on this data, the FDA calculated that therapy with Actos for longer than 12 months was associated with 27.5 excess cases of bladder cancer per 100,000 person-years follow-up, compared to those who never used pioglitazone.

59.     On July 12, 2011, Takeda Limited issued a recall on Actos in France.

60.     Following the recall in France, Takeda Limited refused to issue a recall of Actos in the United States thereby continuing to subject American citizens to the significant risk of developing bladder cancer while ensuring the users in France and Germany were no longer subject to this risk.

61.     As the manufacturers of Actos, Defendants knew or should have known that Actos use for longer than twelve months was associated with bladder cancer.

62.     With the knowledge of the true relationship between long-term use of Actos and developing bladder cancer, rather than take steps to pull the drug off the market, Defendants promoted Actos as a safe and effective treatment for Type 2 diabetes.

63.     Piccinni, *et al.* analyzed the association between antidiabetic drugs and bladder cancer by reviewing reports from the FDA Adverse Event Reporting System between 2004 and 2009.  The association was analyzed by the case/non-case methodology.  There were 31 recorded reports of bladder cancer in patients using pioglitazone.  Piccinni's results indicated that the

reporting odds ratio for pioglitazone was indicative of a "definite risk."  Piccinni, *et al.* Assessing the Association of Pioglitazone Use and Bladder Cancer Through Drug Adverse Event Reporting, Diabetes Care, 34:1369-1371 (June 2011), published ahead of print April 22, 2011.

64.     Despite its knowledge of this dangerous side effect that can result from Actos use, Defendants refused to warn patients, physicians and the medical community about the risk of bladder cancer.

65.     Actos is one of Defendants' top selling drugs.  Upon information and belief, in a recent year of sales, the medication had global sales of $4.8 billion and accounted for approximately 27% of Takeda's revenue.

66.     In 2008, with the knowledge of the risk associated with developing bladder cancer while using Actos long term, Takeda Limited achieved its marketing goal by making Actos the tenth best-selling medication in the United States all while placing American citizens at risk of developing bladder cancer.

67.     Consumers, including Plaintiff Rebhi Yaghnam, who have used Actos for treatment of Type 2 diabetes, have several alternative safer products available to treat the conditions and have not been adequately warned about the significant risks and lack of benefits, associated with long-term Actos therapy.

68.     Defendants, through their affirmative misrepresentations and omissions, actively concealed from Plaintiff Rebhi Yaghnam and his physicians the true and significant risks associated with long-term Actos use.

69.     As a result of Defendants' actions, Plaintiff Rebhi Yaghnam and his physicians were unaware, and could not have reasonably known or have learned through reasonable diligence, that Plaintiff Rebhi Yaghnam had been exposed to the risks identified in this

Complaint, and that those risks were the direct and proximate result of Defendants' conduct.

70.     In 2008, Plaintiff Rebhi Yaghnam was prescribed and began taking Actos upon direction of his physicians for long-term maintenance of Type 2 diabetes.  He continuously took Actos from then until Plaintiff Rebhi Yaghnam subsequently developed bladder cancer in May, 2013.

71.     As a direct result of being prescribed Actos for many years, Plaintiff Rebhi Yaghnam has been permanently and severely injured, having suffered serious consequences from long-term Actos use.  Plaintiff Rebhi Yaghnam has had bladder cancer and surgeries to remove cancerous tumors of his bladder starting in May 2013 and has had other medical treatments as a result of his having bladder cancers.

72.     Plaintiff Rebhi Yaghnam requires and will in the future require ongoing medical care and treatment.

73.     Plaintiff Rebhi Yaghnam, as a direct and proximate result of long-term Actos use, endured severe mental and physical pain and suffering and has and will sustain permanent injuries and emotional distress, along with economic loss due to medical expenses, and living related expenses due to his new lifestyle.

74.     Plaintiff Rebhi Yaghnam would not have used Actos had Defendants properly disclosed the risks associated with its long-term use to Plaintiff Rebhi Yaghnam and to the physicians caring for Plaintiff Rebhi Yaghnam.

## FEDERAL REQUIREMENTS

75.     Defendants had an obligation to comply with the law in the manufacture, design, and sale of Actos.

76.     Upon information and belief, Defendants violated the Federal Food, Drug and

Cosmetic Act, 21 U.S.C. §301, *et seq.*

77.     With respect to the prescription drug Actos, the Defendants, upon information and belief, has or may have failed to comply with all federal standards applicable to the sale of prescription drugs including, but not limited to, one or more of the following violations:

a.     The prescription drug Actos is adulterated pursuant to 21 U.S.C. §351 because, among other things, it fails to meet established performance standards, and/or the methods, facilities, or controls used for its manufacture, packing, storage or installation is not in conformity with federal requirements. See, 21 U.S.C. §351.

b.     The prescription drug Actos is adulterated pursuant to 21 U.S.C. §351 because, among other things, its strength differs from or its quality or purity falls below the standard set forth in the official compendium for Actos and such deviations are not plainly stated on their labels.

c.     The prescription drug Actos is misbranded pursuant to 21 U.S.C. §352 because, among other things, it's labeling is false or misleading.

d.     The prescription drug Actos is misbranded pursuant to 21 U.S.C. §352 because words, statements, or other information required by or under authority of chapter 21 U.S.C. §352 are not prominently placed thereon with such conspicuousness and in such terms as to render it likely to be read and understood by the ordinary individual under customary conditions of purchase and use.

e.     The prescription drug Actos is misbranded pursuant to 21 U.S.C. §352 because the labeling does not bear adequate directions for use, and/or the

labeling does not bear adequate warnings against use where its use may be dangerous to health or against unsafe dosage or methods or duration of administration or application, in such manner and form as are necessary for the protection of users.

f.      The prescription drug Actos is misbranded pursuant to 21 U.S.C. §352 because it is dangerous to health when used in the dosage or manner, or with the frequency or duration prescribed, recommended, or suggested in the labeling thereof

g.      The prescription drug Actos does not contain adequate directions for use pursuant to 21 C.F.R. §201.5, because, among other reasons, of omission, in whole or in part, or incorrect specification of (a) statements of all conditions, purposes, or uses for which it is intended, including conditions, purposes, or uses for which it is prescribed, recommended or suggested in their oral, written, printed, or graphic advertising, and conditions, purposes, or uses for which the drugs are commonly used, (b) quantity of dose, including usual quantities for each of the uses for which it is intended and usual quantities for persons of different ages and different physical conditions, (c) frequency of administration or application, (d) duration or administration or application, and/or (d) route or method of administration or application.

h.      The Defendants violated 21 C.F.R. §201.56 because the labeling was not informative and accurate.

i.      The prescription drug Actos is misbranded pursuant to 21 C.F.R. §201.56

because the labeling was not updated as new information became available that caused the labeling to become inaccurate, false, or misleading.

j.    The Defendants violated 21 C.F.R. §201.57 by failing to provide information that is important to the safe and effective use of the drug including the potential of Actos cause and the need for regular and/or consistent cardiac monitoring to ensure that a potential fatal cardiac arrhythmia has not developed.

k.    The Defendants violated 21 C.F.R. §201.57 because they failed to identify specific tests needed for selection or monitoring of patients who took the prescription drug Actos.

l.    The Defendants violated 21 C.F.R. §201.57 because the safety considerations regarding the prescription drug Actos are such that the drug should be reserved for certain situations, and the Defendants failed to state such information.

m.    The prescription drug Actos is mislabeled pursuant to 21 C.F.R. §201.57 because the labeling fails to describe serious adverse reactions and potential safety hazards, limitations in use imposed by it, and steps that should be taken if they occur.

n.    The prescription drug Actos is mislabeled pursuant to 21 C.F.R. §201.57 because the labeling was not revised to include a warning as soon as there was reasonable evidence of an association of a serious hazard with the drug.

o.    The Defendants violated 21 C.F.R. §201.57 because the labeling failed to

list the adverse reactions that occur with the prescription drug Actos and other drugs in the same pharmacologically active and chemically related class.

p.    The Defendants violated 21 C.F.R. §201.57 because the possibility that a patient could develop Cardiac Arrhythmia after significantly more severe than the other reactions listed in the adverse reactions, and yet the Defendants failed to list the development of Cardiac Arrhythmia before the other adverse reactions on the labeling of the prescription drug Actos.

q.    The prescription drug Actos is mislabeled pursuant to 21 C.F.R. §201.57 because the labeling does not state the recommended usual dose, the usual dosage range, and, if appropriate, an upper limit beyond which safety and effectiveness have not been established.

r.    The prescription drug Actos violates 21 C.F.R. §210.1 because the process by which it was manufactured, processed, and/or held fails to meet the minimum current good manufacturing practice of methods to be used in, and the facilities and controls to be used for, the manufacture, packing, or holding of a drug to assure that it meets the requirements as to safety and have the identity and strength and meets the quality and purity characteristic that they purport or are represented to possess.

s.    The prescription drug Actos violates 21 C.F.R. §210.122 because the labeling and packaging materials do not meet the appropriate specifications.

t.    The prescription drug Actos violates 21 C.F.R. §211.165 because the test

methods employed by the Defendants are not accurate, sensitive, specific, and/or reproducible and/or such accuracy, sensitivity, specificity, and/or reproducibility of test methods have not been properly established and documented.

u.      The prescription drug Actos violates 21 C.F.R. §211.165 in that the prescription drug ACTOS fails to meet established standards or specifications and any other relevant quality control criteria.

v.      The prescription drug Actos violates 21 C.F.R. §211.198 because the written procedures describing the handling of all written and oral complaints regarding the prescription drug Actos were not followed.

w.      The prescription drug Actos violates 21 C.F.R. §310.303 in that the prescription drug Actos is not safe and effective for its intended use.

x.      The Defendants violated 21 C.F.R. §310.303 because the Defendants failed to establish and maintain records and make reports related to clinical experience or other data or information necessary to make or facilitate a determination of whether there are or may be grounds for suspending or withdrawing approval of the application to the FDA.

y.      The Defendants violated 21 C.F.R. §310.305 and §314.80 by failing to report adverse events associated with the prescription drug Actos as soon as possible or at least within 15 days of the initial receipt by the Defendants of the adverse drugs experience.

z.      The Defendants violated 21 C.F.R. §3l0.305 and §314.80 by failing to conduct an investigation of each adverse event associated with the

prescription drug Actos, and evaluating the cause of the adverse event.

aa.    The Defendants violated 21 C.F.R. §310.305 and §314.80 by failing to promptly investigate all serious, unexpected adverse drug experiences and submit follow-up reports within the prescribed 15 calendar days of receipt of new information or as requested by the FDA.

bb.    The Defendants violated 21 C.F.R. §310.305 and §314.80 by failing to keep records of the unsuccessful steps taken to seek additional information regarding serious, unexpected adverse drug experiences.

cc.    The Defendants violated 21 C.F.R. §3 10.305 and §314.80 by failing to identify the reports they submitted properly, such as by labeling them as "15-day Alert report," or "15-day Alert report followup."

dd.    The Defendants violated 21 C.F.R. §312.32 because they failed to review all information relevant to the safety of the prescription drug Actos or otherwise received by the Defendants from sources, foreign or domestic, including information derived from any clinical or epidemiological investigations, animal investigations, commercial marketing experience, reports in the scientific literature, and unpublished scientific papers, as well as reports from foreign regulatory authorities that have not already been previously reported to the agency by the sponsor.

ee.    The Defendants violated 21 C.F.R. §314.80 by failing to provide periodic reports to the FDA containing (a) a narrative summary and analysis of the information in the report and an analysis of the 15-day Alert reports submitted during the reporting interval, (b) an Adverse Reaction Report

for each adverse drug experience not already reported under the Post

marketing 15-day Alert report, and/or (c) a history of actions taken since

the last report because of adverse drug experiences (for example, labeling

changes or studies initiated).

ff.    The Defendants violated 21 C.F.R. §314.80 by failing to submit a copy of

the published article from scientific or medical journals along with one or

more 15-day Alert reports based on information from the scientific

literature.

78.    Defendants failed to meet the standard of care set by the above statutes and

regulations, which were intended for the benefit of individual consumers such as the Plaintiff

Rebhi Yaghnam, making the Defendants liable under Federal law.

## FIRST CAUSE OF ACTION
## STRICT LIABILITY

79.    Plaintiffs incorporate by reference each preceding paragraph as though set forth

fully at length herein.

80.    The dangerous propensities of Actos were known to Defendants, or reasonably

and scientifically knowable to them, through appropriate research and testing by known methods,

at the time they distributed, supplied, or sold their respective products, and not known to primary

care physicians who would be expected to prescribe the drug for their patients.

81.    The Actos products as distributed by Defendants were defective and unreasonably

dangerous prescription drug products, as Defendants failed to provide appropriate and adequate

warnings and instructions to render the products reasonably safe for their ordinary, intended, and

reasonably foreseeable uses; in particular — the common, foreseeable and intended use of Actos

therapy as long-term maintenance for Type II diabetes.

82.     At all times relevant to this action, Defendants manufactured, supplied, and/or sold Actos in a defective and dangerous condition, as described above, to physicians, including Plaintiff Rebhi Yaghnam's physicians.

83.     As a direct, foreseeable and proximate result of Defendants' defective Actos product, Plaintiff Rebhi Yaghnam suffered grievous bodily injuries and consequent economic and other losses, as referenced above, when his physicians, lacking adequate warnings and other appropriate facts that were misrepresented or omitted from the information (if any) Defendants provided to physicians for their respective products, prescribed for Plaintiff Rebhi Yaghnam the use of Actos for s prolonged and unwarranted period of time exceeding twelve (12) months).

84.     As a direct and proximate result of the foregoing, Plaintiff Rebhi Yaghnam has been damaged as against the Defendants in a sum in excess of $75,000.00.

## SECOND CAUSE OF ACTION
## NEGLIGENT FAILURE TO WARN

85.     Plaintiffs incorporate by reference each preceding paragraph as though set forth fully at length herein.

86.     At all times relevant to this action, Defendants were manufacturers of Actos.

87.     Defendants researched, developed, designed, tested, manufactured, inspected, labeled, distributed, marketed, promoted, sold, and otherwise released into the stream of commerce Actos, in the course of same, directly advertised or marketed the product to the FDA, health care professionals and consumers, including Plaintiff Rebhi Yaghnam, or persons responsible for consumers, and therefore had a duty to warn of the risks associated with the use of Actos.

88.     Defendants failed adequately to warn health care professional and the public, including Plaintiff Rebhi Yaghnam and his prescribing physicians, of the true risks of Actos, including that use of Actos for longer than twelve (12) months carried an increase risk in developing bladder cancer.

89.     Defendants failed to timely and reasonably warn of material facts regarding the safety and efficacy of Actos. Had they done so, proper warnings would have been heeded and no health care professional, including Plaintiff Rebhi Yaghnam's physicians would have prescribed Actos for prolonged periods, or no consumer, including Plaintiff Rebhi Yaghnam, would have used Actos for a prolonged period of time.

90.     Actos, which was researched, developed, designed, tested, manufactured, inspected, labeled, distributed, marketed, promoted, sold and otherwise released into the stream of commerce by Defendants, was defective due to inadequate post-marketing warnings because, after Defendants knew or should have known that there was reasonable evidence of an association between Actos and bladder cancer, Defendants failed to provide adequate warnings to health care professionals and the consuming public, including Plaintiff Rebhi Yaghnam, and continued aggressively to promote Actos.

91.     Defendants failed to perform or otherwise facilitate adequate testing; failed to reveal and/or concealed testing and research data; and selectively and misleadingly revealed and/or analyzed testing and research data.

92.     As a direct, foreseeable and proximate result of Defendants' breaches of their duties to exercise reasonable care for the safety of users of their respective products, by negligently failing adequately to test Actos and negligently failing to provide adequate warnings and instructions for same, Plaintiff Rebhi Yaghnam suffered grievous bodily injury and

consequent economic and other loss, as described above, when his physicians, lacking adequate warnings and other appropriate facts that were misrepresented or omitted from the information (if any) Defendants provided to physicians.

93.     As a direct and proximate result of the foregoing, Plaintiff Rebhi Yaghnam has been damaged as against the Defendants in a sum in excess of $75,000.00.

### THIRD CAUSE OF ACTION
### NEGLIGENT DESIGN DEFECT

94.     Plaintiffs incorporate by reference each preceding paragraph as though set forth fully at length herein.

95.     Defendants are the researcher, developer, designer, manufacturer, distributor, marketer, promoted, supplier and seller of Actos, which is defective and unreasonably dangerous to consumers.

96.     Actos is defective in its design or formulation in that it is not reasonably fit, suitable or safe for its intended purpose and/or its foreseeable risks exceed the benefits associated with its design and formulation.  Actos is defective in design or formulation in that it lacks efficacy and/or poses a greater likelihood of injury than other similar medications on the market and are more dangerous than ordinary consumers, including Plaintiff Rebhi Yaghnam, can reasonably foresee.

97.     If the design defect were known at the time of manufacture, a reasonable person would have concluded that the utility of Actos did not outweigh the risk of marketing a product designed in that manner.

98.     The defective condition of Actos rendered it unreasonably dangerous and/or not reasonably safe and the Actos was in the defective condition at the time it left the hands of the

Defendants.  Actos was expected to, and did reach consumers, including Plaintiff Rebhi

Yaghnam, without substantial change in the condition in which it was designed, manufactured,

labeled, sold, distributed, marketed, promoted, supplied and otherwise released into the stream of

commerce.

99.     Plaintiff Rebhi Yaghnam and his physicians were unaware of the significant

hazards and defects associated with Actos.

100.     Actos was unreasonably safe and/or not reasonably safe in that it was more

dangerous than would be reasonably contemplated by the ordinary user. During the period that

Plaintiff Rebhi Yaghnam used Actos, he was being utilizing it in a manner that was intended by

Defendants.

101.     At the time Plaintiff Rebhi Yaghnam received and used Actos, it was represented

to be safe and free from latent defects by Defendants.

102.     Defendants were negligent for designing, manufacturing, and placing into the

stream of commerce a product which was unreasonably dangerous for its reasonably foreseeable

use at the time it left the control of Defendants because of design defects.

103.     Defendants, as prescription drug manufacturers and/or distributors, knew or

should have known of the dangers associated with the prolonged use of Actos as well as the

defective nature of Actos, but continued to design, manufacture, sell, distribute, market, promote

and/or supply Actos so as to maximize sales and profits at the expense of the public health and

safety in conscious disregard of the foreseeable harm caused by Actos.

104.     As a direct, foreseeable and proximate result of Defendants' breaches of their

duties to exercise reasonable care for the safety of users of their respective products, by

negligently failing adequately to test Actos and negligently failing to provide adequate warnings

and instructions for same, Plaintiff Rebhi Yaghnam suffered grievous bodily injury and consequent economic and other loss, as described above, when his physicians, lacking adequate warnings and other appropriate facts that were misrepresented or omitted from the information (if any) Defendants provided to physicians prescribed Actos for Plaintiff Rebhi Yaghnam.

105.    As a direct and proximate result of the foregoing, Plaintiff Rebhi Yaghnam has been damaged as against the Defendants in a sum in excess of $75,000.00.

## FOURTH CAUSE OF ACTION
### NEGLIGENCE

106.    Plaintiffs incorporate by reference each preceding paragraph as though set forth fully at length herein.

107.    As a manufacturer of a prescription pharmaceutical drug product, Defendants owed a duty toward foreseeable users of Actos, including Plaintiff Rebhi Yaghnam, to exercise reasonable care to ensure that Actos products, as manufactured and/or distributed, were reasonably safe for their ordinary and intended uses and, specifically, to ensure through adequate testing, labeling, and otherwise, that physicians (and their patients) were adequately informed as to the potential effects and inherent risks of using Actos in an ordinary and foreseeable manner.

108.    Defendants breached the duties they owed to exercise reasonable care for the safety of users of their products, including Plaintiff Rebhi Yaghnam, by failing to exercise reasonable care in testing their products to identify all inherent risks and associated effects when used in an ordinary and foreseeable manner.

109.    Defendants also breached the duties they owed to exercise reasonable care for the safety of users of their products, including Plaintiff Rebhi Yaghnam, by negligently failing to disseminate, in a manner reasonably calculated to be seen and read by physicians (or their

patients), information concerning their respective products' effects, which was accurate, not misleading, and otherwise adequate to enable physicians (or their patients) to make informed choices concerning the reasonably safe use of their products.

110.    As a direct, foreseeable and proximate result of Defendants' breaches of their duties to exercise reasonable care for the safety of users of their respective products, by negligently failing adequately to test Actos and negligently failing to provide adequate warnings and instructions for same, Plaintiff Rebhi Yaghnam suffered grievous bodily injury and consequent economic and other loss, as described above, when his physicians, lacking adequate warnings and other appropriate facts that were misrepresented or omitted from the information (if any) Defendants provided to physicians prescribed Actos to Plaintiff Rebhi Yaghnam.

111.    As a direct and proximate result of the foregoing, Plaintiff Rebhi Yaghnam has been damaged as against the Defendants in a sum in excess of $75,000.00.

<u>**FIFTH CAUSE OF ACTION**</u>
<u>**NEGLIGENCE *PER SE***</u>

112.    Plaintiffs incorporate by reference each preceding paragraph as though set forth fully at length herein.

113.    As part of their duty to exercise reasonable care for the safety of persons, including Plaintiff Rebhi Yaghnam, who would be expected to use their products, Defendants were obliged to follow public laws and regulations enacted and promulgated to protect the safety of such persons, including 21 U.S.C. §331(a) and §352, and other statutes and regulations, which make it unlawful to misbrand prescription drug products.

114.    The package inserts (and other labeling, if any) for each of the Actos products failed to conform to the requirements of 21 U.S.C. §352, including subsections (a), (c), and (f),

or the requirements of 21 C.F.R. §201.100(c)(1), and, therefore, violated 21 U.S.C. §331(a), as the package inserts and/or other labeling failed to contain, *inter alia*, information, including warnings and instructions for use, adequate to enable the use of Actos in an ordinary, foreseeable, and intended manner that was reasonably safe, taking into account the potential benefits and potential risks entailed in such use, or to bear "information for its use, including . . . any relevant hazards, contraindications, side effects, and precautions" that were adequate to enable doctors to "use the drug safely and for the purposes for which it is intended;" and, in addition, contained false, inaccurate, and/or misleading statements concerning their respective products' side effects.

115.   Accordingly, Defendants, in distributing the Actos products labeled in violation of these statutes and associated regulations, were negligent *per se*.  That is, negligent as a matter of law.

116.   As a direct, foreseeable and proximate result of the negligence per se of Defendants, specifically, their violations of the above-referenced statutes and regulations, Plaintiff Rebhi Yaghnam suffered grievous bodily injury and consequent economic and other loss, as described above, when his physicians, in reasonable reliance on Defendants' compliance with these health and safety laws and regulations, prescribed for Plaintiff Rebhi Yaghnam the use of Actos for a prolonged and unwarranted period of time exceeding twelve (12) months. Plaintiff Rebhi Yaghnam ingested Actos as prescribed and instructed by his physicians, leading to his injuries.

117.   As a direct and proximate result of the foregoing, Plaintiff Rebhi Yaghnam has been damaged as against the Defendants in a sum in excess of $75,000.00.

## SIXTH CAUSE OF ACTION
## BREACH OF EXPRESS WARRANTY

118.    Plaintiffs incorporate by reference each preceding paragraph as though set forth fully at length herein.

119.    The Actos product materially failed to conform to those representations made by Defendants in package inserts, and otherwise, concerning the properties and effects of the Actos products, respectively manufactured and/or distributed and sold by Defendants, and which Plaintiff Rebhi Yaghnam purchased and ingested in direct or indirect reliance upon these express representations.  Such failure by Defendants constituted a material breach of express warranties made, directly or indirectly, to Plaintiff Rebhi Yaghnam concerning Actos sold to Plaintiff Rebhi Yaghnam.

120.    As a direct, foreseeable and proximate result of Defendants' breaches of express warranties, Plaintiff Rebhi Yaghnam suffered grievous bodily injury and consequent economic and other loss, as described above, when his physicians, in reasonable reliance upon such express Plaintiff Rebhi Yaghnam, prescribed for Plaintiff Rebhi Yaghnam the use of Actos for a prolonged and unwarranted period of time exceeding twelve (12) months.  Plaintiff Rebhi Yaghnam purchased and ingested Actos as prescribed and instructed by his physicians, leading to his injuries.

121.    As a direct and proximate result of the foregoing, Plaintiff Rebhi Yaghnam has been damaged as against the Defendants in a sum in excess of $75,000.00.

## SEVENTH CAUSE OF ACTION
## BREACH OF IMPLIED WARRANTY

122.    Plaintiffs incorporate by reference each preceding paragraph as though set forth fully at length herein.

123.    Defendants impliedly warranted their respective Actos products, which they manufactured and/or distributed and sold, and which Plaintiff Rebhi Yaghnam purchased and ingested, to be of merchantable quality and fit for the common, ordinary, and intended uses for which the products were sold.

124.    Defendants breached their implied warranties of the Actos products sold to Plaintiff Rebhi Yaghnam because these products were not fit for their common, ordinary, and intended use.

125.    As a direct, foreseeable and proximate result of Defendants' breaches of implied warranties, Plaintiff Rebhi Yaghnam suffered grievous bodily injury and consequent economic and other loss, as described above, when his physicians, in reasonable reliance upon the implied warranties, prescribed for Plaintiff Rebhi Yaghnam the use of Actos for a prolonged and unwarranted period of time exceeding twelve (12) months. Plaintiff Rebhi Yaghnam purchased and ingested Actos as prescribed and instructed by his physicians, leading to his injuries.

126.    As a direct and proximate result of the foregoing, Plaintiff Rebhi Yaghnam has been damaged as against the Defendants in a sum in excess of $75,000.00.

## EIGHTH CAUSE OF ACTION
## NEGLIGENT MISREPRESENTATION

127.    Plaintiffs incorporate by reference each preceding paragraph as though set forth fully at length herein.

128.    Defendants owed a duty in all of its undertakings, including the dissemination of information concerning Actos, to exercise reasonable care to ensure that it did not in those undertakings create unreasonable risks of personal injury to others.

129.    Defendants disseminated to physicians, through published labels and otherwise,

information concerning the properties and effects of Actos with the intention that physicians

would rely upon that information in their decisions concerning the prescription of drug therapy

for their patients.

130.    Defendants, as prescription drug manufacturers and/or distributors, knew or

reasonably should have realized that physicians, in weighing the potential benefits and potential

risks of using Actos, would rely upon information disseminated to them by the manufacturer of

the name brand product, and that many patients, in accordance with those prescriptions, would be

likely to ingest Actos as properly dispensed by their pharmacies.

131.    Defendants, as prescription drug manufacturers and/or distributors, knew or

reasonably should have realized that patients receiving prescriptions for Actos, written by

physicians in reliance upon information disseminated by Defendants as the

manufacturer/distributor of Actos, would be placed in peril of grievous personal injury if the

information disseminated and relied upon was materially inaccurate, misleading, or otherwise

false.

132.    Defendants failed to exercise reasonable care to ensure that the information it

disseminated to physicians concerning the properties and effects of Actos was accurate and not

misleading, and, as a result, disseminated information to physicians that was negligently and

materially inaccurate, misleading, false, and unreasonably dangerous to patients such as Plaintiff

Rebhi Yaghnam.

133.    As a direct, proximate and foreseeable result of Defendants' negligence,

inaccurate, misleading, and otherwise false information disseminated by Defendants, and

believing the information to be true, prescribed for Plaintiff Rebhi Yaghnam the use of Actos for

a prolonged and unwarranted period of time, exceeding twelve (12) months. Plaintiff Rebhi

Yaghnam ingested Actos as prescribed and instructed by his physicians, leading to his injuries.

134.    As a direct and proximate result of the foregoing, Plaintiff Rebhi Yaghnam has

been damaged as against the Defendants in a sum in excess of $75,000.00.

**NINTH CAUSE OF ACTION**
**VIOLATION OF CONSUMER PROTECTION LAWS**

135.    Plaintiffs incorporate by reference each preceding paragraph as though set forth

fully at length herein.

136.    Plaintiff Rebhi Yaghnam purchased and used Actos primarily for personal use and

thereby suffered ascertainable losses as a result of Defendant's actions in violation of the

consumer protection laws.

137.    Unfair methods of competition or deceptive acts or practices that were proscribed

by law, including the following:

      a.    Representing that goods or services have characteristics, ingredients, uses,
benefits or qualities that they do not have;

      b.    Advertising goods or services with the intent not to sell them as
advertised; and

      c.    Engaging in fraudulent or deceptive conduct that creates a likelihood of
confusion or misunderstanding.

138.    Defendants violated consumer protection laws through their use of false and

misleading misrepresentations or omissions of material fact relating to the safety and

effectiveness of Actos.

139.    Defendants uniformly communicated the purported benefits of Actos while failing

to disclose the serious and dangerous side-effects related to Actos and of the true state of Actos,

the regulatory status, its safety, its efficacy and its true usefulness. Defendants made these representations to physicians, the medical community at large and to patients and consumers, such as Plaintiff Rebhi Yaghnam, in their marketing and advertising.

140.    Defendants' conduct in connection with Actos was also impermissible and illegal in that it created a likelihood of confusion and misunderstanding because Defendants misleadingly, falsely and/or deceptively misrepresented and omitted numerous material facts regarding (among other things) the utility, benefits, costs, safety, efficacy and advantages of Actos.

141.    As a direct and proximate result of the aforesaid statutory violations, Plaintiffs are entitled to relief, as prayed for below.

## TENTH CAUSE OF ACTION
## LOSS OF CONSORTIUM

142.    Plaintiffs incorporate by reference each preceding paragraph as though set forth fully at length herein and further alleges as follows.

143.    Plaintiff, Hasbieh Yaghnam, was at all times relevant hereto the spouse of Plaintiff Rebhi Yaghnam, and as such lives and cohabitates with him.

144.    For the reasons set forth herein, Plaintiffs have necessarily paid and have become liable to pay for medical aid, treatment and for medications, and will necessarily incur further expenses of a similar nature in the future.

145.    For the reasons set forth herein, Plaintiff Hasbieh Yaghnam has been caused, presently and in the future, to suffer the loss of her spouse's companionship, services, society and the ability of Plaintiff Hasbieh Yaghnam has in those respects been impaired and depreciated, and the marital association between husband and wife has been altered, and accordingly, the

Plaintiff Hasbieh Yaghnam has been caused great mental anguish.

146.    As a direct and proximate result of the foregoing, Plaintiff Hasbieh Yaghnam has been damaged as against the Defendants in a sum in excess of $75,000.00.

## PUNITIVE DAMAGES

147.    Defendants' conduct, as described above, was wanton, willful, extreme and outrageous and done with reckless disregard for the lives of consumers and users of their products, including the Plaintiff Rebhi Yaghnam, with knowledge of the safety and efficacy problems Defendants intentionally suppressed this knowledge form the general public. Defendants made conscious decisions not to redesign, re-label, warn or inform the unsuspecting consuming public.   As a direct and proximate result of the foregoing Plaintiff Rebhi Yaghnam is entitled to punitive damages.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs demand judgment against Defendants as follows:

a.    Awarding monetary damages in an amount that is fair and reasonable to Plaintiffs for all of Plaintiffs' injuries in an amount to be determined at trial, as alleged herein;

b.    Awarding prejudgment and post judgment interest to Plaintiffs;

c.    Awarding the costs and the expenses of this litigation to Plaintiffs;

d.    Awarding reasonable attorneys' fees and costs to Plaintiffs as provided by law;

e.    Awarding punitive damages in an amount that is fair and reasonable as determined by a jury at trial; and

f.    Granting all such other relief as the Court deems necessary, just and proper.

## <u>DEMAND FOR JURY TRIAL</u>

Plaintiffs hereby request a trial by jury of all issues triable by jury.

DATED:  <u>    September 22, 2014    </u>

Respectfully submitted,

<u>/s/ Laurence D. Mass            </u>
Laurence D. Mass    #30977MO
230 South Bemiston, Suite 1200
St. Louis, Missouri  63105
Phn:    (314) 862-3333, Ext. 20
Fax:    (314) 862-0605
Email: laurencedmass@att.net

Attorney for Plaintiffs